IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHELLY LEMIRE, individually and as )
a personal representative for the  )
ESTATE OF ROBERT ST. JOVITE,       )   2:08-cv-00455-GEB-EFB
GERARD CHARLES ST. JOVITE, and     )
NICOLE ST. JOVITE,                 )   ORDER GRANTING IN PART AND
                                   )   DENYING IN PART DEFENDANTS'
          Plaintiffs,              )   MOTION TO DISMISS[*]
                                   )
v.                                 )
                                   )
ARNOLD SCHWARZENEGGER, CALIFORNIA  )
DEPARTMENT OF CORRECTIONS AND      )
REHABILITATION, JAMES E. TILTON,   )
TOM L. CAREY, D.K. SISTO, REBECCA  )
CAHOON, ALFREDO ALCARAZ, RAYMOND   )
WADE, CHERYL ORRICK, GALE MARTINEZ,)
GORDON WONG, JAMES NUEHRING,       )
SHABREEN HAK, ALVARADO TRAQUINA,   )
ALFREDO NORIEGA, JOHN M. DUSAY,    )
C. HOLLIDAY, JAIME CHUA, DODIE     )
HICKS,                             )
                                   )
          Defendants.              )
_____)

On March 18, 2010, Defendants filed a motion to dismiss Plaintiffs' Fifth Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs allege the following claims in their FAC: (1) deliberate indifference under 42 U.S.C. § 1983 in violation of the Eighth and Fourteenth Amendments against all individual Defendants sued in their individual capacities; (2) supervisory liability under 42 U.S.C. § 1983 for

---

[*] This matter is deemed suitable for decision without oral argument. E.D. Cal. R. 230(g).

1

1  promulgating unconstitutional policies and customs in violation of the
2  Eighth Amendment against Defendants Schwarzenegger, Tilton, Carey,
3  Sisto, Traquina, Nuehring, Wong, Martinez, and Orrick in their
4  individual capacities; (3) supervisory liability under 28 U.S.C. §
5  1983 for negligent hiring and failure to train and supervise against
6  Defendants Schwarzenegger, Tilton, Carey, Sisto, Traquina, Nuehring,
7  Wong, Martinez, and Orrick in their individual capacities; (4) state
8  law negligence and wrongful death against all Defendants; (5) medical
9  malpractice against CDCR, Hak, Traquina, Noriega, Dusay, and Hicks;
10 (6) failure to summon medical care under California Government Code
11 sections 844.6 and 845.6 against all Defendants; and (7) civil rights
12 violations under California Unruh Act, California Civil Code section
13 51, against all Defendants.  Defendants seek dismissal of Defendants
14 Schwarzenegger, Tilton, Carey, Sisto, and Nuehring from the first
15 claim.  Defendants also seek dismissal of the second and fourth
16 through seventh claims.  Finally, Defendants seek dismissal of the
17 negligent hiring portion of the third claim against all Defendants,
18 and the remainder of the third claim against Defendants
19 Schwarzenegger, Tilton, Sisto, Carey, Nuehring, and Traquina only.
20 For the following reasons, the dismissal motion is GRANTED in part and
21 DENIED in part.

**I.  Allegations Contained in Plaintiffs' Fifth Amended Complaint**

Robert St. Jovite ("Robert") was found dead in his prison cell at the California State Prison-Solano ("CSP-Solano") by his cellmate, John Lee Harden, at approximately 3:10 p.m. on May 10, 2006. (FAC 1:22-28, ¶ 26.)  Robert was a mentally ill inmate housed in the medical unit in CSP-Solano at the time of his death.  (Id. 1:22-25.) When Harden found Robert, Robert was hanging by a bed sheet wrapped

around his neck from a ceiling vent above the toilet.  (Id. ¶ 26.) Harden "got [Robert] down to the ground," began calling for help, and performed cardiopulmonary resuscitation (CPR) on Robert.  (Id. ¶¶ 26-27.)  Harden yelled to Corrections Officer Rebecca Cahoon to "hurry up."  (Id. ¶ 27.)  "It was ten or more minutes before Cahoon actually arrived at the cell door."  (Id. ¶ 27.)  Cahoon then "stopped for several minutes" and stated, "Nobody tells me to hurry up."  (FAC ¶ 27.)  She also stated, "I'm not medical[,] I don't respond to man down calls when [i]nmates bang on doors."  (Id.)  Cahoon did not immediately signal the tower to ask for assistance and did not perform CPR on Robert.  (Id.)  Cahoon then stated to Harden, "it's all done, come out of there."  (Id.)  "Harden was then handcuffed and removed from the area."  (Id.)  Defendants Orrick, Martinez, Wong, Hak, Noriega, Alcaraz, Wade, and Hicks also "responded" but failed to perform CPR on Robert or provide him "with immediate and adequate medical attention."  (Id.)  The Vacaville Fire Department arrived "thirty minutes later" and performed CPR on Robert.  (FAC ¶ 28.) Plaintiffs allege Robert "would have benefitted from the administration of timely life-saving medical measures, including CPR." (Id. ¶ 29.)

Robert "suffered from chronic and severe abdominal [and] colorectal pain and mental health problems throughout his incarceration at CSP-Solano."  (Id. ¶ 31.)  His condition "worsened three months prior to his death."  (Id. ¶ 33.)  In March 2006, Robert "was reporting increased abdominal pain" and "the prison doctor "suspected pancreatitis."  (Id.)  "[A CAT scan] of the abdomen in April 2006 ruled out pancreatitis" but "[n]o further diagnostic tests were conducted."  (Id.)  As to his mental health, Robert was diagnosed

3

"with depression, anxiety, and obsessive compulsive disorder." (FAC ¶ 33.) After Robert "reported symptoms of paranoia" on March 17, 2006, "the doctor noted 'Monitor for paranoia (new complaint).'" (Id. ¶ 33-34.) "[Robert] was not prescribed any psychotropic medication for the new symptoms of paranoia. He was prescribed Seroquel for severe anxiety but the paranoia was never addressed, nor was he monitored for the emerging dangerous new symptom." (Id. ¶ 34.) Robert and his mother, Plaintiff Sherie Lemire, requested "medical and mental health assessment, care, and treatment" for Robert during his incarceration. (Id. ¶ 35.) These requests were only "partially-effective," "wholly ineffective," or were "completely ignored." (Id.)

Robert "was housed in Building 8" at CSP-Solano. (Id. ¶ 37.) Building 8 is a "Special Housing Unit for inmates within the [CDCR] who require Correctional Clinical Case Management Services ["CCCMS"]." (FAC ¶ 36.) Building 8 uses "climate control" and houses those inmates who take "medications that do not allow the body to tolerate extreme heat," known as "hot meds." (Id.) "Building 8 is a two-story housing unit used to house approximately 200 inmates." (Id. ¶ 38.) It is staffed by two floor officers and one control tower officer on three eight-hour shifts. (Id. ¶¶ 38, 42.) Chua was the control tower officer on May 10, 2006. (Id. ¶ 42.) Holliday and Cahoon began their shifts as floor officers at 2:00 p.m. on May 10, 2006. (Id. ¶ 38) Holliday and Cahoon immediately attended a meeting upon commencing their shift and did not return to Building 8 until 3:30 p.m. (FAC ¶ 43.) Defendant Nuehring called the meeting, which concerned an inmate attack on a guard in another facility (Id. ¶¶ 40, 44.) Plaintiffs allege these meetings were called "with some regularity" and would last up to an hour and a half. (Id. ¶ 50.)

4

1  Plaintiffs allege "anything in excess of 45 minutes compromises the
2  safety and security of housing unit for both staff and inmates."
3  (Id.)  Sisto "had knowledge [of] and approved the meeting that day."
4  (Id. ¶ 51.)

5  Plaintiffs allege that "while there were nearly 100 inmate
6  witnesses to the incident, internal investigation conducted by the
7  prison failed to interview them and failed to conduct any meaningful
8  investigation." (Id. ¶ 30.)  Plaintiffs also allege "various
9  individual defendants engaged in a common practice condoned by
10 supervisory personnel of altering official records to cover up the
11 constitutional violations that led to the death of [Robert],"
12 including "the Crime/Incident Reports 'CDCR 837k' forms and their
13 attachments [which] were altered by the facility Lieutenant and the
14 responding officers and other personnel in an effort to cover[ ]up the
15 constitutional violations that led to the death of Robert." (FAC 3:2-
16 11.)  Plaintiffs allege Wong "had all of the reporters change their
17 reports to reflect that the incident started at 3:44 p.m." (Id. ¶
18 88.)  Further, "[n]one of the Defendants who responded to the scene
19 documented any reason why they failed to initiate life saving
20 measures." (Id. ¶ 77.)  "Accordingly, CDCR has a policy or de[ ]facto
21 custom and practice of tampering with reports, obstructing justice and
22 witness tampering in its efforts to cover up constitutional violations
23 such as denying an inmate emergency medical treatment and life saving
24 measures." (Id. ¶ 89.)

25 Plaintiffs further allege, "On October 21, 2005, the CDCR
26 Director of Institutions[,] John Dovey[,] mandated that each
27 correctional officer be trained in [CPR] to provide 'immediate life
28 support in any medical emergency until medical staff arrive . . . ."

(Id. ¶ 64.)  This policy "required each officer to carry a personal CPR mouth shield on their person at all time to ensure they can provide life support until medical staff arrive."  (Id. ¶ 65.) Plaintiffs allege that the conduct of the first responders on May 10, 2006, "all of whom failed to provide CPR . . ., indicates that no CPR policy had been effectively instituted at CSP-Solano by May 10, 2006." (FAC ¶ 67.)  Plaintiffs allege "Correctional Officers at CSP-Solano regularly refuse to provide CPR by using their personal mouth shield" and instead they "wait for the [A]mbu[ ]bag to arrive, or the medical staff to provide CPR."  (Id. ¶ 74.)

Plaintiffs also allege: "[O]n June 9, 2005, Judge Karlton in the case of Coleman v. Schwarzenegger (Eastern District of California Case No. CI S-90-0520) issued an order requiring the CDCR to develop and implement a policy mandating that [CPR] be performed by correctional officers upon inmates."  (FAC ¶ 60.)  Plaintiffs allege Defendants were "on notice of the issues relevant to this case . . . as a result of the fact that [they] were named defendant[s] in the Coleman case . . . ."  (Id. ¶ 9.)  Plaintiffs allege Defendants' failure to promulgate these policies resulted in Robert's "long term suffering and ultimately death."  (Id. ¶ 90.)

## II.  Legal Standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  To avoid dismissal, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  When considering a dismissal motion, all "allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."

6

1  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  However, this
2  "tenet . . . is inapplicable to threadbare recitals of a cause of
3  action's elements, supported by mere conclusory statements." Ashcroft
4  v. Iqbal, 556 U.S. ---, 129 S.Ct. 1937, 1940 (2009).

### III.  Analysis

**A.   Plaintiffs' State Law Claims**

7         Defendants argue Plaintiffs' state law claims are "barred by
8  the six-month statute of limitations" since Plaintiffs failed to file
9  this suit within six months of the rejection of their Government Claim
10 Form as required by the California Tort Claims Act (the "CTCA").
11 (Defs.' Mot. to Dismiss ("Mot.") 6:2.)  Plaintiffs respond Defendants'
12 failure to send Plaintiffs the notice of rejection within 45 days
13 after the Claim Form was received, as required by the CTCA, extends
14 the statute of limitations period to two years from the accrual of the
15 cause of action.  (Plts.' Opp'n to Mot. ("Opp'n") 2:15-5:22.)
16 However, Defendants' failure to send the notice of rejection within
17 the 45-day period does not extend the limitation period.  The court in
18 Glorietta Foods, Inc. v. City of San Jose, 147 Cal. App. 3d 835, 838
19 (1983), rejected this proposition, explaining that a public entity may
20 "give notice of rejection of a claim at any time and thereby commence
21 the running of a six-month statute of limitations."  Only if the
22 "public entity fails to give notice of rejection of the claim," or the
23 notice of rejection is otherwise deficient, does the limitations
24 period extend to two years.  Id.; see also Katelaris v. County of
25 Orange, 92 Cal. App. 4th 1211, 1216 n.4 (2001) (rejecting identical
26 argument as "plainly wrong" since "the two-year statute only applies
27 when *no written notice is sent*.  Written notice given at any time
28 triggers the six-month limitations period, even if it is beyond the

45-day period in which a public entity is supposed to act upon claims." (emphasis in original)); Maranatha Corr. v. California Dep't of Corr., 2005 WL 1766994, at *6 (Cal. Ct. App. 2005) ("Although notice of rejection was not sent within the 45-day period to act on [Plaintiff's] claim, this did not result in [an] exten[sion of] the six-month limitation period to two years.").

Here, Plaintiff Sherie Lemire ("Lemire"), individually and as personal representative for the Estate of Robert St. Jovite, filed her Government Claim Form with the State Compensation Board on November 9, 2006.  (FAC ¶ 3.)  The claim was rejected on April 25, 2007.  (Id.)  Plaintiffs filed this lawsuit on February 27, 2008, more than 10 months after receiving notice from the Board rejecting their claim.  (Id.)

As discussed in this Court's previous order, the CTCA applies to Plaintiffs' state law claims.  See, e.g., Renteria v. City of Maywood, 2009 WL 3297152, *6 (E.D. Cal. 2009) (claim under California Unruh Act); Hernandez v. Jordan, 2009 WL 937960, *2 (E.D. Cal. 2009) (claim based on negligence under section 844.6); Davis v. Sutley, 2008 WL 1817262, *6 (E.D. Cal. 2008) (claim based on defendant's failure to provide medical care under section 845.6).  Since Lemire failed to file this lawsuit within six months after Defendants rejected her claim, her state law claims are barred by the statute of limitations and are dismissed.

**B.   Plaintiffs' First, Second, and Third Claims Against Defendants Schwarzenegger and Tilton**

Defendants also seek dismissal of Plaintiffs' first, second, and third claims alleged against Defendants Schwarzenegger and Tilton. These same claims were previously dismissed with leave to amend in

8

this Court's January 28, 2010 Order. Plaintiffs have not alleged any new facts in their FAC and continue to allege that Schwarzenegger and Tilton are liable in this case because of their involvement in <u>Coleman v. Schwarzenegger</u>. However, Plaintiffs have failed to allege how these Defendants' participation in the <u>Coleman</u> litigation suffices to create liability in this case. Therefore, Plaintiffs' claims against Defendants Schwarzenegger and Tilton are dismissed without leave to amend.

**C.   Plaintiffs' First Claim: Deliberate Indifference Under 42 U.S.C. § 1983 in Violation of the Eighth Amendment**

Defendants also seek dismissal of Plaintiffs' first claim based on "deliberate indifference" under the Eighth Amendment alleged against Defendants Carey, Sisto, and Nuehring, arguing "Plaintiffs did not allege facts showing that [these defendants] knew of [Robert's] medical conditions, much less, that they knowingly disregarded those needs." (Mot. 7:18-20.) Plaintiffs rejoin they have sufficiently plead a claim for deliberate indifference.

> A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is sufficiently serious, and (2) the subjective requirement that the prison official has a sufficiently culpable state of mind. The objective requirement that the deprivation be sufficiently serious is met where the prison official's act or omission results in the denial of the minimal civilized measures of life's necessities. The subjective requirement that the prison official has a sufficiently culpable state of mind is met where the prison official acts with deliberate indifference to inmate health or safety. A prison official acts with deliberate indifference when [he] knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

1  Jacobs v. Sullivan, No. 1:05-cv-01625-YNP PC, 2010 WL 1342368, at *3
2  (E.D. Cal. Apr. 5, 2010) (citations, quotations, and brackets
3  omitted).
4         Here, Plaintiffs allege Defendants "knew, or should have
5  known, of Robert's serious medical, physical and mental health
6  conditions, were deliberately indifferent to them[,] ignored them,
7  [and] failed to provide access to and delivery of adequate medical
8  intervention, care and attention for him."  (FAC ¶ 94.)  Plaintiffs
9  further allege Defendants Carey, Sisto, and Nuehring held meetings,
10 including a meeting on May 10, 2006, which "left insufficient staff to
11 continue direct supervision of the inmates" for up to an hour and a
12 half.  (Id. ¶ 105.)  Plaintiffs allege these Defendants had knowledge
13 that "the mentally ill population needed to be protected from each
14 other and from themselves."  (Id. ¶ 106.)  Plaintiffs further allege
15 various Defendants engaged in the "common practice[,] condoned by
16 supervisory personnel[,] of altering official records to cover up the
17 constitutional violations," including altering the time of Robert's
18 suicide on the "Crime/Incident Reports."  (FAC 3:2-11.)  Defendants
19 have failed to show how these allegations are insufficient to state a
20 claim for deliberate indifference.  Therefore, this portion of their
21 motion is denied.

**D.  Plaintiffs' Second and Third Claims for Supervisory Liability Under 42 U.S.C. § 1983**

24         Defendants also seek dismissal of Plaintiffs' second claim
25 in which Plaintiffs allege Defendants Carey, Sisto, Orrick, Martinez,
26 Wong, Traquina, and Nuehring are liable under 42 U.S.C. § 1983 as
27 supervisors.  (Mot. 9:1-12:8.)  Plaintiffs' second claim is premised
28 on Defendants' alleged promulgation of unconstitutional customs,

policies, and practices that violate the Eighth Amendment. Defendants argue Plaintiffs have failed to allege sufficient facts to state claim. (Mot. 12:3-4.) Defendants Carey, Sisto, and Nuehring also seek dismissal of Plaintiffs' third claim alleged against them under 42 U.S.C. § 1983 based on their status as supervisors. (FAC ¶¶ 134-145.) Plaintiffs' third claim is premised on Defendants alleged negligent hiring and failure to train and supervise the referenced subordinates.[1]

> Liability under § 1983 arises only upon a showing of personal participation by the defendant[s]. A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under § 1983.

Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (cite omitted).

Plaintiffs allege Defendants Sisto, Carey, and Nuehring maintained a policy of ordering floor officers "to leave the medical unit, Building 8, unmanned to have prison-wide meetings called by the Warden." (FAC ¶¶ 125-127.) Plaintiffs further allege Defendants Nuehring, Wong, Orrick, and Martinez were present and watched as their subordinates failed to provide CPR. (Id. ¶¶ 14, 16, 81.) Plaintiffs allege these Defendants covered up the constitutional violations by altering official documents. (Id. 3:2-11, ¶ 8.) Plaintiffs further allege these defendants maintained a policy permitting their

---

[1] Defendants also seek dismissal of the negligent hiring portion of the third claim as to all Defendants, arguing negligent hiring can never provide a basis for § 1983 liability. Defendants cite an inapposite case to support this conclusory argument. See Mot. 12:14-15 (citing Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998) (holding "[m]ere negligence is not sufficient to establish liability" for a *deliberate indifference* claim)). Therefore, the Court declines to reach this argument.

11

1  subordinates to refuse the administration of CPR, and instead "wait
2  for the [A]mbu[ ]bag to arrive, or the medical staff to provide CPR."
3  (Id. ¶ 74.)  Defendants have failed to show how these allegations are
4  insufficient to state a claim for supervisory liability.  Therefore,
5  this portion of the dismissal motion is denied.

6  Defendants also seek dismissal of Defendant Traquina from
7  Plaintiffs' second claim, arguing "[n]o facts about Traquina's conduct
8  were alleged in the second cause of action."  (Mot. 10:10-11.)
9  Plaintiffs do not respond to this portion of Defendants' motion, and
10 it is unclear which unconstitutional policy or practice Plaintiffs
11 allege Defendant Traquina promulgated.  Therefore, Plaintiffs' second
12 claim is dismissed as to Traquina without leave to amend.

13 Defendants further seek dismissal of Traquina from
14 Plaintiffs' third claim, arguing that "Plaintiffs [have] alleged no
15 facts explaining how [Traquina] participated in, directed, or knew of
16 and failed to act on any violations of [Robert's] constitutional
17 rights."   (Mot. 12:23-25.)   However, Defendants have cited no
18 authority to support their conclusory argument that Plaintiffs'
19 allegations–that Traquina knew Robert was receiving inadequate medical
20 care from Traquina's subordinates yet failed to act–are insufficient.
21 (FAC ¶¶ 17, 19, 141.)  Therefore, this portion of Defendants'
22 dismissal motion is denied.
23 //
24 //
25 //
26 //
27 //
28 //

### IV. Conclusion

For these reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The following claims are dismissed:

1. Plaintiff Lemire's state law claims are dismissed without leave to amend.

2. The allegations in Plaintiffs' first, second, and third claims against Defendants Schwarzenegger and Tilton are dismissed without leave to amend.

3. Plaintiffs' allegations in their second claim against Defendant Traquina are dismissed without leave to amend.

Dated: April 16, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge