UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY LEMIRE, individually and as a personal representative for the ESTATE OF ROBERT ST. JOVITE; GERARD CHARLES ST. JOVITE; and NICOLE ST. JOVITE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>D.K. SISTO, JAMES NUEHRING, REBECCA CAHOON, and C. HOLLIDAY,<br><br>　　　　Defendants. | No.  2:08-cv-00455-GEB-EFB<br><br>**ORDER RE: PLAINTIFFS' MOTIONS IN LIMINE** |

　　　　Plaintiffs move in limine ("MIL") for a pretrial order precluding the admission of certain evidence at trial. Each motion is addressed below.

　　**MIL No. 1**

　　　　Plaintiffs seek to exclude any "testimony regarding the practice of understaffing . . . at night" in the building in which the Decedent was housed ("Building 8"), arguing "because [the Decedent] died in the afternoon, graveyard shift staffing practices are not relevant to the jury's inquiry." (Pls.' MIL No.

1

1 3:3-11, ECF No. 174.) Plaintiffs further argue: "[e]ven if relevant, . . . [such] evidence should be excluded" under Federal Rule of Evidence ("Rule") 403 "because its limited probative value is substantially outweighed by the danger of unfair prejudice to the plaintiff and confusion of issues." (Id. at 3:11-13.)

Defendants rejoin:

> Evidence of the [night shift] staffing levels is relevant because the amount of time the floor officers were absent from Building 8 is a disputed fact the jury must decide. . . .
>
> . . . .
>
> . . . The jury here need not accept Plaintiffs' version of the facts, or find that the officers were absent from the housing unit for more than three hours.
>
> . . . Based on [conflicting evidence], a jury can conclude that Building 8 was without floor officers any where from more than three and half hours to less than two hours.
>
> . . . .
>
> If the jury finds that the floor officers were removed for about two hours, evidence of the [night shift] staffing levels is relevant to show that Defendants could reasonably conclude that it was safe to remove the floor officers because the conditions mirrored those to [night shift]. . . .
>
> Nothing in Lemire[ v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1076 (9th Cir. 2013)] stated that evidence of the [night shift] staffing level was irrelevant. Rather, the Court discussed the differences between the . . . shifts to show the existence of a disputed fact. A jury could find more similarities between the two shifts to conclude that Defendants did not create an unreasonable risk of harm to the inmates in Building 8 . . . . Thus, evidence of the [night shift] staffing levels is relevant and

>       highly probative of the central issue of Plaintiffs' [condition-of-confinement] claim against Nuehring and Sisto [for their alleged failure to provide sufficient supervision for inmates in Building 8.]

(Defs.' Opp'n to Pls.' MIL No. 1 1:21-3:17, ECF No. 180.)

Plaintiffs have shown neither that evidence of the night shift's staffing levels lacks probative value on their conditions-of-confinement claim, nor that Rule 403 considerations justify its exclusion. Therefore, this in limine motion is DENIED.

**MIL No. 2**

Plaintiffs seek to exclude evidence or argument that Defendants Sisto and Neuhring "were unaware [of the Decedent's] . . . mental health problems and therefore . . . could not . . . be liable for his death[,]" arguing such evidence is irrelevant and should be excluded under Rule 403. (Pls.' MIL No. 2 1:24-2:4, 3:25-4:3, ECF No. 175.) Plaintiffs contend:

>       [T]he Ninth Circuit determined [in Lemire] that the appropriate inquiry is whether Nuehring and Sisto . . . "were aware that removing all floor officers from Building 8 . . . would pose a substantial risk of serious harm **to someone in [the Decedent's] situation, not simply whether they were subjectively aware of [the Decedent's] specific medical needs**."
>
>       . . . Thus, it is the risk of harm to someone in [the Decedent's] situation which the jury must examine. . . .
>
>       . . . The Defendants' . . . lack of knowledge of [the Decedent's] mental health[, specifically,] adds nothing to the jury's determination of liability so it should be excluded.

(Id. at 2:19-3:24 (emphasis in original) (quoting Lemire, 726 F.3d at 1077-78) (citations omitted).)

3

Defendants "do not dispute that the Ninth Circuit's decision . . . held that the proper inquiry on Plaintiffs' Eighth Amendment claim against Defendants Sisto and Nuehring is whether Defendants were aware that removing all floor officers from Building 8 posed a substantial risk of serious harm to someone in [the Decedent's] situation." (Defs.' Opp'n to Pls.' MIL No. 2 1:21-25, ECF No. 182.) Defendants rejoin, however, that "[t]his holding . . . does not preclude Defendants from presenting evidence or testifying that they were unaware of the medical or mental-health condition of the inmates in Building 8, including [the Decedent]." (Id. at 1:25-27.) Defendants argue:

> [It is] anticipate[d] that Plaintiffs will argue or seek to introduce evidence of the Coleman litigation to support their contention that the inmates in Building 8 were mentally ill and required greater supervision than other general population inmates on the yard. Indeed, in Lemire, the Ninth Circuit, in dicta, pointed out that "the Coleman litigation was well known . . . to officials at CSP-Solano," which in turn "alerted prison officials to the acute problem of inmate suicides in CDCR prisons, including CSP-Solano." Lemire, 726 F.3d at 1078. Defendants have a right to defend against these contentions and submit evidence about their knowledge of Coleman, the alleged suicide rates at the prison, and what distinguished inmates in Building 8 from other general-population inmates. This will necessarily require Defendants to testify about their knowledge of how and which inmates were classified as [Correctional Clinical Care Management System ("CCCMS")], who made that determination, what information Defendants were provided about CCCMS, the housing and other needs of these inmates, and the level of supervision they required. Thus, evidence of Defendants' knowledge of the medical and mental-health conditions of the inmates in Building 8, including [the Decedent], is highly relevant and admissible.

(Id. at 2:1-14.)

4

Plaintiffs reply:

> While . . . knowledge of the fact that Building 8 was a unit housing CCCMS inmates is relevant to the danger posed to Building 8's inmates by the withdrawal of all supervisory floor staff . . . , knowledge or [the] lack thereof about [the Decedent's mental health condition in] particular has no bearing on whether a jury infers that unsupervised mentally ill inmates housed together are more likely to harm themselves or others than are inmates in the regular prison population.

(Pls.' Reply to MIL No. 2 4:5-15, ECF No. 203.)

Plaintiffs have shown neither that the referenced evidence lacks probative value on their conditions-of-confinement claim, nor that Rule 403 considerations justify its exclusion. Therefore, this in limine motion is DENIED.

**MIL No. 3**

Plaintiffs move to exclude "any expert testimony" by Alfredo Noriega, M.D.; Dorothy Hicks, R.N.; Shabreen Hak, L.V.N.; and John M. Dusay, M.D. "that goes beyond the usual scope of treat[ing] medical provider[] testimony." (Pls.' MIL No. 3 3:7-9, ECF No. 176.) Plaintiffs argue: "[w]hile each of these witnesses likely have relevant testimony, Plaintiffs move to preclude Defendants from putting on improper opinion testimony or expert testimony from any of these witnesses as they have not been properly disclosed pursuant to F.R.C.P. Rule 26." (Id. at 3:1-3.)

Defendants rejoin:

> Defendants timely and properly disclosed six non-retained experts, including the matters about which they would be testifying. All of the disclosed non-retained experts were, at one time, Defendants in this case, and all,

5

| | |
|---|---|
|1| but one, ha[ve] been deposed and provided testimony about their knowledge of the relevant events, the policies and procedures at issue, or their treatment of [the Decedent]. Although not deposed, Dr. Dusay provided detailed declarations of his treatment of [the Decedent] in connection with the parties' summary-judgment motions. Despite having knowledge of the testimony Defendants' non-retained experts are expected to provide, Plaintiffs failed to specify what testimony is objectionable, why it is improper, or how the disclosures failed to comply with Federal Rule of Civil Procedure Rule 26. The Court should therefore deny the motion.|

(Defs.' Opp'n to Pls.' MIL No. 3 1:22-2:5, ECF No. 181.)

This motion lacks the preciseness and sufficient factual context required for a pretrial in limine ruling. See, e.g., Weiss v. La Suisse, Soc'y D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 407-08 (S.D.N.Y. 2003) (denying motion to exclude evidence for a "lack[] of specificity[,]" stating "[n]o particular documents or testimony have been identified in the motion"); Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc., No. CV 08-8525 PSG (PJWx), 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010) (stating "motions in limine should rarely seek to exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial").

Dated: July 30, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge