UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLY LEMIRE, individually and as a personal representative for the ESTATE OF ROBERT ST. JOVITE; GERARD CHARLES ST. JOVITE; and NICOLE ST. JOVITE, <br><br> Plaintiffs, <br><br> v. <br><br> D.K. SISTO, JAMES NUEHRING, REBECCA CAHOON, and C. HOLLIDAY, <br><br> Defendants. | No.  2:08-cv-00455-GEB-EFB <br><br> **ORDER RE: DEFENDANTS' MOTIONS IN LIMINE** |

Defendants move in limine ("MIL") for a pretrial order precluding the admission of certain evidence at trial. Each motion is addressed below.[1]

**MIL No. 1**

Defendants "move to preclude Plaintiffs from introducing evidence or eliciting testimony about Defendants' involvement in other lawsuits or incidents alleging deliberate indifference or other misconduct or bad acts on the grounds that such evidence is inadmissible [under Federal Rule of Evidence ("Rule") 404(b)], irrelevant, and highly prejudicial." (Defs.'

---

[1]  Defendants' ninth in limine motion, filed on July 21, 2015, (ECF No. 229), is not addressed in this order.

1

1    MIL No. 1 1:21-24, ECF No. 158.) Defendants argue:

2
            The jury here must decide whether Defendants
3           were indifferen[t] to [a] substantial risk of
            serious harm to [the Decedent] by removing
4           the floor officers for an extended period of
            time and failing to provide him with CPR on
5           May 10, 2006. Evidence of other lawsuits or
            complaints against Defendants does not tend
6           to prove that they ignored a substantial risk
            of serious harm on the date at issue here.
7           Furthermore, introduction of Defendants' past
            litigation or other complaints of misconduct
8           will be refuted, which in turn, will waste
            time and unnecessarily prolong the trial.
9           Accordingly, the Court should exclude
            evidence of other lawsuits or inmate
10          complaints against Defendants.

11   (Id. at 3:2-9.)

12          Plaintiffs rejoin that such evidence is admissible

13   under Rule 404(b) because it is probative of "the knowledge

14   element of deliberate indifference[,]" i.e., "the Defendants'

15   knowledge of conditions that endangered [the Decedent]."  (Pls.'

16   Opp'n to Defs.' MIL No. 1 2:7-8, 2:18-20, ECF No. 190.)

17   Plaintiffs argue:

18           A defendant is liable under the Eighth
            Amendment for denying an inmate humane
19          conditions of confinement only if he knew of
            and disregarded a risk to the inmate's health
20          or safety. . . . Plaintiff[s] thus bear[] the
            burden of establishing that the [Defendants]
21          were aware of facts from which the inference
            could be drawn that a substantial risk of
22          serious harm exists, and that [the
            Defendants] also drew that inference.
23
            . . . Defendants' knowledge of the
24          problems can be established by the
            introduction of evidence of lawsuits,
25          grievances, and complaints.

26   (Id. at 3:1-11.)

27          Defendants reply, inter alia, that "[e]ven if

28   Plaintiffs have a specific lawsuit, grievance, or incident in

                                    2

1  mind . . . that they contend is factually similar to the events

2  in this case, the Court should preclude the evidence under

3  Federal Rule of Civil Procedure 37(c)" because Plaintiffs did not

4  respond to interrogatories propounded during discovery that

5  requested such information. (Defs.' Reply to MIL No. 1 3:1-10,

6  ECF No. 206.) This argument is disregarded since it was made for

7  the first time in Defendants' reply brief. See Zamani v. Carnes,

8  491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not

9  consider arguments raised for the first time in a reply brief.");

10  see also Final Pretrial Order 6:3-5 (prescribing in the section

11  concerning in limine motions: "The failure to state a basis for

12  the admissibility or non-admissibility of disputed evidence

13  constitutes a waiver or abandonment of that basis").)

14        This motion lacks the concreteness required for a

15  pretrial in limine ruling.

16    **MIL No. 2**

17        Defendants "move to preclude Plaintiffs from

18  introducing evidence or eliciting testimony that the State of

19  California or the California Department of Corrections and

20  Rehabilitation (CDCR) will reimburse [the Defendants] for any

21  adverse judgment that may result from the trial." (Defs.' MIL No.

22  2 1:21-23, ECF No. 159.) Defendants argue such evidence is

23  inadmissible under Rule 411, irrelevant, and "prejudicial because

24  a jury is more inclined to deliver a verdict against a defendant

25  if it believes he is indemnified." (Id. at 1:24-2:2.) Defendants

26  further contend: "[although] the State is required [under

27  California Government Code § 825] to indemnify its employees, at

28  their request, in litigation arising from the course and scope of

3

1    their employment[,] . . . the State is not obligated to indemnify

2    its employees for exemplary damages." (Id. at 2:13-15.)

3         Plaintiffs "concede" the referenced evidence should be

4    excluded from the first portion of the bifurcated trial, but

5    rejoin "the evidence is admissible in [the jury's]

6    determination[] of punitive damages." (Pls.' Opp'n to Defs.' MIL

7    No. 2 2:1-6, ECF No. 191.) Plaintiffs argue: "'[T]he ultimate

8    source of payment' is relevant to the issue of punitive damages

9    because '[t]he jury must know the impact an award will have on

10   the defendant to properly assess punitive damages.'" (Id. at

11   2:12-15 (alteration in original) (quoting Perrin v. Anderson, 784

12   F.2d 1040, 1047–48 (10th Cir. 1986).)

13        Defendants reply, inter alia, that Plaintiffs' argument

14   "that indemnification evidence is relevant to a jury's

15   determination of punitive damages," is contrary to Ninth Circuit

16   authority, Larez v. Holcomb, 16 F.3d 1513, 1520-21 (9th Cir.

17   1994). (Defs.' Reply to MIL No. 2 1:21-27, ECF No. 207.)

18        "It has long been the rule in [the Ninth Circuit] that

19   evidence of insurance or other indemnification is not admissible

20   on the issue of damages . . . ." Larez, 16 F.3d at 1518. The

21   Ninth Circuit has applied this principle in the context of

22   determining compensatory and punitive damages. Id. at 1518-1521;

23   see id. at 1520 ("The reasons that lead us to find the

24   compensatory damages indemnification instruction improper apply

25   with equal force in the punitive damages context."). Therefore,

26   this in limine motion is GRANTED.

27        **MIL No. 3**

28        Defendants "move to preclude Plaintiffs from

                              4

1   introducing into evidence or eliciting testimony about documents

2   filed or rulings made in Coleman v. Brown (E.D. Cal No. 2:90-cv-

3   00520-KJM-DAD), including those related to the suicide rate and

4   overcrowding in California prisons," arguing that, "other than

5   the documents pertaining to [the California Department of

6   Corrections & Rehabilitation's ("CDCR")] CPR policy, this

7   evidence is inadmissible hearsay, irrelevant, and prejudicial."

8   (Defs.' MIL No. 3 1:21-25, ECF No. 160.) Defendants do not

9   reference any specific document or testimony in this motion,

10   other than "the 'Report on Suicides Completed in the California

11   Department of Corrections and Rehabilitation in Calendar Year

12   2006' by Dr. Raymond F. Patterson (Coleman Docket ECF No.

13   3030)."[2] Concerning this document, Defendants argue:

14          No evidence shows that the Coleman court
           adopted or made any findings concerning
15          the . . . Report. Thus, Dr. Patterson's
           statements and opinions lack foundation and
16          are hearsay and not subject to judicial
           notice. To the extent Plaintiffs seek [to]
17          use . . . Dr. Patterson's report as expert
           opinion, they did not timely or properly
18          disclose Dr. Patterson as an expert as
           required under Federal Rule of Civil
19          Procedure 26(a)(2) or the Court's March 3,
           2014 Scheduling Order.

20
           Further, Dr. Patterson's report . . .
21          [is] irrelevant. The jury here must decide
           whether Defendants exposed [the Decedent] to
22          an unreasonable risk of harm by removing the
           floor staff for a certain period of time and
23          whether the first responders ignored his
           medical needs by failing to provide him with
24          immediate life-saving measures. The suicide
           rate for prisons other than [California State
25          Prison ("CSP")]-Solano and for periods other
           than 2006 have no bearing on the issues the
26          jury must decide.

27
   _____
   [2]     Over five thousand (5,000) documents have been filed in the Coleman case
28   to date.

5

1    (Id. at 2:11-27.)

2            Plaintiffs counter that "the Coleman litigation is

3    relevant to the [D]efendants' knowledge of the substantial risk

4    of harm caused by removing the floor officers in Building 8 and

5    failing to provide CPR." Plaintiffs argue:

6               Obviousness is not measured by what is
                obvious to a layman, but rather by what would
7               be obvious in light of reason and the basic
                general knowledge that a prison official may
8               be presumed to have obtained regarding the
                type of deprivation involved. The Coleman
9               litigation was well known in penological
                circles and to officials at CSP-Solano. That
10              litigation specifically alerted prison
                officials to the acute problem of inmate
11              suicides in CDCR prisons, including CSP
                Solano.
12

13   (Pls.' Opp'n to Defs.' MIL No. 3 5:1-3, 5:14-22, ECF No. 193

14   (internal quotation marks and citation omitted).) Plaintiffs

15   further rejoin concerning Dr. Peterson's 2006 report that the

16   report and opinions and conclusions contained therein are

17   admissible under Rule 803(8) as an official report. Plaintiffs

18   contend:

19              [The Report was] made by an official
                investigatory body at the recommendation of
20              [Magistrate] Judge Moulds in 1994.

21              On 09/13/1995 . . . , the Honorable
                Lawrence K. Karlton, adopted the findings &
22              recommendation of the magistrate an[d]
                referred the matter [to] the magistrate judge
23              for nomination of a special master. On
                03/14/1996 . . . Judge Karlton appointed
24              Raymond F Patterson, M.D. as a mental health
                expert.
25
                The United States Supreme Court
26              addressed the issue of whether investigatory
                reports are admissib[le] in Beech Aircraft
27              Corp. v. Rainey 488 US 153, 161-162, 170, and
                found that investigatory reports otherwise
28              admissible under Rule 803(8) are not rendered

                                6

1    inadmissible merely because they state a
     conclusion of opinion . . . .
2
            Th[is] investigative report[] [is an]
3    official report[] within the meaning of . . .
     Rule 803(8), and [is] trustworthy having been
4    prepared timely, by a person . . . with
     special skill [having] be[en] appointed by
5    the court as Special Master[], without any
     evidence or even insinuation of bias or
6    motive to lie. Hence, the report[] and the
     reporter's opinions and conclusions are
7    admissible. See Beech, supra.

8  (Id. at 3:18-4:22 (citations omitted).)

9        Defendants reply, *inter alia*,[3] that the referenced

10 report "do[es] not satisfy the trustworthiness element of Rule

11 803(8) because no evidence shows that [Dr. Peterson] conducted a

12 proper investigation to support his opinions or findings."

13 (Defs.' Reply to MIL No. 3 2:5-7, ECF No. 213.) "Accordingly,"

14 Defendants argue "the court should exclude the . . . 2006

15 report[] as irrelevant and inadmissible hearsay." (Id. at 14-15.)

16       To the extent Defendants seek a pretrial ruling

17 excluding Dr. Peterson's 2006 report, they have not shown that it

18 lacks probative value on Plaintiffs' conditions-of-confinement

19 claim, that Rule 403 justifies its exclusion, or that it is not

20 admissible under Rule 803(8). Therefore, that portion of the in

21 limine motion is DENIED.

22       The remainder of the motion lacks the preciseness and

23 sufficient factual context required for a pretrial in limine

24 ruling.

25

26

27    [3]   Defendants also make arguments in their reply concerning the exclusion
      of Dr. Peterson's Special Master Report for 2005. These arguments are
      disregarded since Defendants did not mention exclusion of this specific
28    document in their motion.

1  **MIL No. 4**

2        Defendants move to preclude the following anticipated

3  evidence for the stated reasons:

4        [(1) Evidence on the Decedent's] medical and
          mental-health conditions, [the] cause of
5         those conditions, and whether [the Decedent]
          received proper treatment for such conditions
6         on the grounds that they have no personal
          knowledge of the treatment [he] received or
7         the information he relayed to his providers,
          and they are not qualified to opine about the
8         adequacy of the medical or mental-health care
          [he] received at CSP-Solano[; and]
9
          . . . [(2) E]vidence . . . of [the
10        Decedent's] medical conditions, the medical
          care he received for those conditions, and
11        any complaints or inmate appeals he may have
          submitted or had about his medical conditions
12        or treatment [on the ground that t]his
          evidence is not relevant to the remaining
13        claims in this case.

14 (Defs.' MIL No. 4 1:21-2:4, ECF No. 170.)

15       Plaintiffs rejoin that they do not intend to introduce

16 the referenced evidence on the proposition that the Decedent

17 received constitutionally inadequate care. Instead, Plaintiffs

18 contend they "intend to introduce CDCR's own medical/mental

19 health records in order to demonstrate [the Decedent's] medical

20 and mental health condition at the time of his death as evidence

21 of the extent of his pain and suffering." (Pls.' Opp'n to Defs.'

22 MIL No. 4 2:3-16, 3:20-4:5, 4:22-26, ECF No. 198.) Plaintiffs

23 further argue that the Decedent's CDCR medical records are

24 admissible under the "hearsay exception for statements made for

25 purposes of medical diagnosis or treatment." (Id. at 5:7-6:22.)

26       Defendants also raise new objections to this evidence

27 in their reply brief, which are not considered since they were

28 not timely argued.

1        This motion lacks the concreteness required for a

2   pretrial in limine ruling.

3        **MIL No. 5**

4        Defendants "move to preclude Plaintiffs and their

5   counsel from [presenting evidence] or argu[ment] . . . that [the

6   Decedent] was murdered by his cell mate, John Harden[,]" arguing

7   "Plaintiffs did not allege that [the Decedent] was murdered, they

8   did not put Defendants on notice of this theory." (Defs.' MIL No.

9   5 1:21-24, ECF No. 162.) Defendants further contend that

10  "allowing Plaintiffs to advance this theory at trial is

11  prejudicial to Defendants, and there is no evidence to support

12  [the] theory." (Id. at 1:24-26.)

13       Plaintiffs oppose the motion, rejoining that certain

14  deposition testimony indicates that Officer Cahoon stopped Harden

15  from providing CPR to the Decedent because she believed Harden

16  was attacking the Decedent, and that such testimony "is relevant

17  to the issue of deliberate indifference." (Pls.' Opp'n to Defs.'

18  MIL No. 5 2:8-21, 3:4-5, ECF No. 195.)

19       To the extent Defendants seek in this in limine motion

20  to preclude Plaintiffs from advancing the claim at trial that the

21  Decedent was murdered by his cellmate, the motion is GRANTED

22  since this claim is not preserved in the December 10, 2014 Final

23  Pretrial Order. "[The Ninth Circuit] ha[s] consistently held that

24  issues not preserved in the pretrial order have been eliminated

25  from the action." Hunt v. Cnty. of Orange, 672 F.3d 606, 617 (9th

26  Cir. 2012) (internal quotation marks and citation omitted); see

27  also United States v. First Nat'l Bank of Circle, 652 F.2d 882,

28  886 (9th Cir. 1981) ("[A] party need offer no proof at trial as

1   to matters agreed to in the order, nor may a party offer evidence

2   or advance theories at the trial which are not included in the

3   order or which contradict its terms.").

4        To the extent this in limine motion seeks other relief,

5   it lacks the concreteness required for a pretrial in limine

6   ruling.

7   **MIL No. 6**

8        Defendants "move to preclude Plaintiffs and their

9   counsel from testifying, eliciting testimony, or arguing in the

10  jury's presence that Defendants Cahoon's or Holliday's failure to

11  provide [the Decedent] with CPR caused his death or that [the

12  Decedent] would have benefited or survived had he been given

13  CPR." (Defs.' MIL No. 6 1:21-24, ECF No. 163.) Defendants argue:

14  "[o]pinions about causation, diagnosis, and prognosis can only be

15  rendered on the basis of specialized knowledge held by an expert

16  qualified by medical education, experience and training[,]" and

17  here, "Plaintiffs are not competent to opine about [the

18  Decedent's] survivability[,] and they have no expert to testify

19  about this matter." (Id. at 1:25-27, 2:7-10.)

20        Plaintiffs counter: "[t]he Ninth Circuit prescribe[d]

21  that [the issue of whether Defendants Cahoon's and Holliday's

22  failure to provide the Decedent with CPR caused his death] should

23  be decided by the jury[,]" and "[t]he jury's consideration of

24  this issue requires introduction of evidence regarding [the

25  Decedent's] condition and argument from counsel." (Pls.' Opp'n to

26  Defs.' MIL No. 6 2:2-14, ECF No. 192.)

27        The Ninth Circuit held in Lemire, in relevant part, as

28  follows:

10

1

### 3.    Causation

2           We analyze causation only with respect
3    to Defendants Cahoon and Holliday . . . .

            Viewing the evidence in the light most
4    favorable to Plaintiffs, . . . a jury could
     reasonably determine that [the Decedent] was
5    alive and capable of being revived if CPR had
     been timely provided by Cahoon and Holliday.
6    First, when the . . . paramedics arrived over
     twenty minutes after [the Decedent] was
7    discovered by Cahoon and Holliday, they
     immediately administered CPR, and continued
8    to do so for almost twenty minutes before he
     was pronounced dead. A jury could conclude
9    that, if the paramedics believed something
     could be done so long after [the Decedent]
10   was found unconscious and not breathing,
     starting CPR earlier might have had a
11   benefit. Second, [Supervising Registered
     Nurse ("SRN")] Hicks testified that [the
12   Decedent] could have died any time between
     six and thirty minutes prior to the time she
13   evaluated him. This suggests that if Cahoon
     or Holliday had started CPR immediately,
14   which would have been anywhere between five
     to twenty-five minutes before SRN Hicks
15   arrived at the scene, [the Decedent] would
     not have been beyond revival at the time and
16   therefore might have survived. Drawing all
     reasonable inferences in Plaintiffs' favor, a
17   jury could conclude that had Cahoon and
     Holliday provided CPR immediately, [the
18   Decedent] might have survived.

19   Lemire, 726 F.3d at 1084 (emphasis in original).

20         The Ninth Circuit held in Lemire that the summary

21   judgment record created a triable issue of fact on the issue of

22   whether Defendants Cahoon's and Holliday's alleged failure to

23   immediately perform CPR caused the Decedent's death. Therefore,

24   this in limine motion is DENIED.

25         Further, to the extent Defendants' reply brief could be

26   construed as reframing this in limine motion by narrowing the

27   scope of evidence they seek to exclude, that argument is

28   disregarded as untimely.

1    **MIL No. 7**

2         Defendants "move to exclude and limit the testimony of

3    Plaintiffs' correctional experts Walter L. Kautzky and George E.

4    Sullivan[,]" arguing:

5              (1) the experts are expected to provide
               similar testimony, thus permitting both to
6              testify will be cumulative, prejudicial, and
               a waste of time; (2) the experts' opinions
7              and reference[s] to events or matters that
               are no longer at issue or individuals who are
8              no longer parties to this action are
               irrelevant and prejudicial; (3) the experts
9              are not qualified to opine about [the
               Decedent's] medical and mental-health
10             conditions, the adequacy of the treatment he
               received, whether he would have benefitted
11             from CPR, and the level of care [Correctional
               Clinical Care Management System] inmates
12             require; and (4) the experts' opinions that
               Defendants acted with deliberate
13             indifference, the ultimate question of law in
               this matter, are improper and inadmissible.
14

15   (Defs.' MIL No. 7 1:22-2:2, ECF No. 164.) Specifically,

16   Defendants request the following relief:

17             [T]he Court should preclude Plaintiffs from
               calling both experts and allow them to call
18             one or the other[;] . . .

19                  . . . .

20                  . . . [P]reclude [Plaintiffs' experts]
               from offering . . . opinions or making . . .
21             statements at trial [concerning the
               Decedent's medical or mental-health
22             conditions, the adequacy of the level of care
               he received for his conditions, the cause of
23             his conditions, or whether he would have
               benefited from CPR;]
24
                    . . . .
25
                    . . . [P]reclude Plaintiffs' experts
26             from testifying or opining about matters
               unrelated to Defendants' decision to remove
27             the floor officers from Building 8 and not
               provide CPR[; and]
28
                              12

1                          . . . .

2                 . . . [P]reclude the experts from making
                . . . statements or opinions in front of the
3               jury [that Defendants acted with deliberate
                indifference].
4

5    (Id. at 2:22-23, 4:25-5:2, 6:8-10, 7:11-12, 7:24-27.)

6             Plaintiffs "concede[]" that both correctional experts

7    will not be necessary at trial, and state they "will only call

8    one correctional expert." (Pls.' Opp'n to Defs.' MIL No. 7 2:23-

9    25, ECF No. 197.) Therefore, the Court need not decide this

10   portion of the motion.

11            Plaintiffs   oppose   the   remainder   of   the   motion,

12   rejoining in summary as follows:

13                Defendants . . . maintain   that   the
                correctional expert's opinions will reference
14              matters no longer at issue or individuals who
                are  no  longer  parties  to  this  action.
15              However, the incident involved many people
                who are no longer parties, yet are relevant
16              and   provide   relevant   information   which
                support the expert's conclusions.
17
                Defendants further maintain that neither
18              expert  is  qualified  to  opine  on  [the
                Decedent's]   medical   and   mental-health
19              conditions,  and  the  adequacy  of  his
                treatment. The correctional experts provide
20              no medical opinions.

21                Finally,  Defendants  argue  that  the
                correctional expert's opinion that Defendants
22              acted  with  deliberate  indifference,  is
                inadmissible  as  ultimate  questions  of  law.
23              Plaintiffs disagree with this observation.

24   (Id. at 2:2-19.)

25            "It is well-established . . . that expert testimony

26   concerning an ultimate issue is not per se improper. Indeed, Fed.

27   R. Evid. 704(a) provides that expert testimony that is 'otherwise

28   admissible is not objectionable because it embraces an ultimate

                                    13

1    issue to be decided by the trier of fact.'" <u>Hangarter v.</u>

2    <u>Provident Life & Acc. Ins. Co.</u>, 373 F.3d 998, 1016 (9th Cir.

3    2004) (alteration in original) (internal quotation marks and

4    citation omitted). "That said, an expert witness cannot give an

5    opinion as to her legal conclusion, i.e., an opinion on an

6    ultimate issue of law." <u>Id.</u> (internal quotation marks and

7    citation omitted).

8          Therefore, Defendants' in limine motion is granted to

9    the extent it seeks to preclude Plaintiffs' correctional expert

10   from giving the legal opinion that a Defendant acted with

11   "deliberate indifference." <u>See, e.g.</u>, <u>M.H. v. Cnty. of Alameda</u>,

12   No. 11-cv-02868-JST, 2015 WL 54400, at *3 (N.D. Cal. Jan. 2,

13   2015) (stating "Plaintiffs' experts may not offer testimony using

14   the specific term[] . . . "deliberate indifference"); <u>Gonzalez v.</u>

15   <u>City of Garden Grove</u>, No. CV 05-1506 CAS (JTLx), 2006 WL 5112757,

16   at *7 (C.D. Cal. Dec. 4, 2006) (concluding an expert witness

17   could "not testify as to the legal conclusion[] . . . that the

18   City's alleged inadequate training constitutes 'deliberate

19   indifference'"); <u>Wiles v. Dep't of Educ.</u>, Nos. 04-00442 ACK-BMK,

20   05-00247 ACK-BMK, 2008 WL 4225846, at *1 (D. Haw. Sept. 11, 2008)

21   ("[T]he term 'deliberate indifference' is . . . a judicially

22   defined and/or legally specialized term.").

23         The remainder of the motion lacks the concreteness

24   required for a pretrial in limine ruling.

25       **MIL No. 8**

26         Defendants "move to preclude Plaintiffs from requesting

27   that the jury award 'hedonic' damages . . . or arguing to the

28   jury that they are entitled to recover for the loss of [the

                                    14

1   Decedent's] enjoyment of life." (Defs.' MIL No. 8 1:21-24, ECF

2   No. 171.) Defendants argue, *inter alia*,[4] that hedonic damages are

3   "intended to compensate the injured party for the reduction in

4   the quality of life caused by the injury[, and i]n death cases,

5   such as this, that purpose is inapplicable." (Id. at 3:8-10.)

6   Defendants further argue that "any evidence [concerning hedonic

7   damages] would be speculative . . . , especially [regarding]

8   someone in [the Decedent's] position who had a lengthy history of

9   criminal and drug-related activities and incarceration." (Id. at

10  3:10-13.)

11          Plaintiffs oppose the motion, arguing "the Ninth

12  Circuit Pattern Instruction concerning the MEASURE OF TYPES OF

13  DAMAGES (5.2)" includes "loss of enjoyment of life" as a factor

14  that jurors should consider in awarding damages. (Pls.' Opp'n to

15  Defs.' MIL No. 8 2:19-27, ECF No. 196.)

16          Defendants reply:

17          Plaintiffs' reliance on the Ninth
            Circuit's Model Jury Instruction No. 5.2 for
18          damages is misplaced. No. 5.2 is a generic
            instruction, intended to be used in both
19          personal injury and survival or wrongful
            death actions. The instruction is intended to
20          be modified based on the claims being
            asserted. Nothing in the instruction (nor do
21          Plaintiffs cite any authority that) provides
            that all the listed damages in No. 5.2 are
22          available in every case in which the
            instruction is given.
23

24  (Defs.' Reply to MIL No. 8 2:7-12, ECF No. 212.)

25

26

---

27  [4]     Defendants also seem to seek a pretrial ruling that hedonic damages, if
    recoverable, are "one component of a general damages award for pain and
28  suffering" rather than "a separate award." (Id. at 2:11-12.) However,
    Defendants have not shown that a pretrial ruling on this issue is necessary.

1          "Hedonic damages are those 'that attempt to compensate

2    for the loss of the pleasure of being alive.'" <u>Dorn v. Burlington</u>

3    <u>N. Santa Fe R.R. Co.</u>, 397 F.3d 1183, 1187 n.1 (9th Cir. 2005)

4    (quoting Black's Law Dictionary 395 (7th ed. 1999)); <u>accord</u> <u>Loth</u>

5    <u>v. Truck-A-Way Corp.</u>, 60 Cal. App. 4th 757, 760 n.1 (1998) ("As

6    interpreted  by  the  courts  around  the  United  States,  hedonic

7    damages  means  either  a  loss  of  enjoyment  of  life  or  loss  of

8    life's pleasures."). "Under California survivorship law, . . .

9    hedonic damages[] are not available." <u>T.D.W. v. Riverside Cnty.</u>,

10   No. EDCV 08-232 CAS (JWJx), 2009 WL 2252072, at *5 (C.D. Cal.

11   June 27, 2009) (citing Cal. Code Civ. P. § 377.34); <u>Garcia v.</u>

12   <u>Sup. Ct.</u>, 42 Cal. App. 4th 177, 187-88 (1996); <u>Cnty. of L.A. v.</u>

13   <u>Sup. Ct.</u>, 21 Cal. 4th 292, 294-95 (1999)).

14          "Because  federal  law  is  silent  on  the  measure  of

15   damages in § 1983 actions, California's disallowance of [hedonic]

16   damages governs unless it is inconsistent with the policies of §

17   1983." <u>Chaudrhy v. City of L.A.</u>, 751 F.3d 1096, 1103 (9th Cir.

18   2014). "Whether a state-law limitation on damages applies in §

19   1983 actions depends on whether the limit is inconsistent with §

20   1983's goals of compensation and deterrence." <u>Id.</u>

21          Neither  the  Supreme  Court  nor  the  Ninth  Circuit  has

22   addressed whether a state law's disallowance of hedonic damages

23   is inconsistent with § 1983 where an alleged violation of federal

24   law  caused  the  victim's  death,  and  there  is  a  split  of  non-

25   binding  authority  on  the  issue.  <u>See, e.g.</u>,  <u>Bell  v.  City  of</u>

26   <u>Milwaukee</u>, 746 F.2d 1205, 1235-41 (7th Cir. 1984) ("Wisconsin law

27   cannot be applied to preclude the [decedent's] estate's recovery

28   for loss of life."), <u>overruled in part on other grounds by</u> <u>Russ</u>

1  v. Watts, 414 F.3d 783 (7th Cir. 2005); Frontier Ins. Co. v.

2  Blaty, 454 F.3d 590, 600 (6th Cir. 2006) (holding "federal law

3  does not require, in a section 1983 action, recovery of hedonic

4  damages stemming from a person's death"); T.D.W., 2009 WL

5  2252072, at *5-7 (stating "the case law in this area is

6  inconsistent," but deciding: "excluding damages of

7  decedent's . . . loss of enjoyment of life would be inconsistent

8  with the purposes of section 1983"). However, in Chaudhry, the

9  Ninth Circuit "agree[d] with" the Seventh Circuit's "reasoning

10 in" Bell, in deciding that "California's prohibition against pre-

11 death pain and suffering damages limits recovery too severely to

12 be consistent with § 1983 deterrence policy." Chaudry, 751 F.3d

13 at 1105. This indicates that the Ninth Circuit would follow the

14 Seventh Circuit's analysis on this issue. For this reason, the

15 Court holds that notwithstanding California's prohibition

16 thereof, excluding hedonic damages, i.e. damages for the

17 Decedent's loss of enjoyment of life, would be inconsistent with

18 the purposes of section 1983.

19      Further, Defendants have not shown that hedonic damages

20 are too speculative to be considered by the jury.

21      For the stated reasons, this in limine motion is

22 DENIED.

23 Dated:  July 31, 2015

24

25

26                    GARLAND E. BURRELL, JR.
                      Senior United States District Judge

27

28

17